[Civ. No. 13914. First Dist., Div. One. June 27, 1950.]

NAOMI WILLIAMS, Respondent, v. BENJAMIN JAMES MOON, Appellant.

 

Elmer E. Nichols for Appellant.

Raymond A. Ferrario for Respondent.

PETERS, P. J.—The trial court, in an action brought by plaintiff to have defendant declared to be the father of one of her children, determined that defendant was the father of the child, and ordered him to make monthly payments for the support of the child, to pay the hospital and doctor's bills incurred by plaintiff during the birth of the child, and to pay plaintiff's counsel fees. Defendant appeals.

There has been but one brief filed on this appeal—the appellant's opening brief. Respondent has informed the clerk of this court that she is unable to pay for the preparation of a brief on appeal, and submits her case upon the record.

Respondent was married to Frank L. Williams in 1935, and by him admittedly had four children. On June 1, 1945, she filed an action for divorce, and on October 23, 1945, she obtained her interlocutory decree of divorce. At the time of trial —October, 1947—the final had not yet been entered. The child that is the subject of this action—Benjamin James Williams—was born on April 14, 1946, just a little less than six months after the interlocutory. With a normal period of gestation, the child was conceived in July of 1945.

Respondent testified that she met appellant in March, 1945, and that from May, 1945, until March of 1946, she frequently engaged in sexual intercourse with him, and that during such period she had intercourse with no other man. Appellant admitted that, although he and respondent at no time had lived together, he had had intercourse with respondent during the period when conception would normally have occurred. There is evidence, denied by appellant, that he admitted paternity of the child.

Just when respondent and her husband separated, and whether after such separation the husband and respondent had access to each other, are the pivotal questions in the case. Respondent testified that when she met appellant, which she testified was in March, 1945, she was "separated" from her husband. In the questionnaire filed with her divorce complaint she averred that she separated from him on May 29, 1945. This affidavit is dated June 29, 1945, and was filed in the action on July 6, 1945. It is there averred that on June 29, 1945, the "children, myself and husband—he won't leave" lived in the same house with respondent. Appellant testified, and this testimony stands uncontradicted, that he was introduced to respondent's husband by respondent in the latter's home sometime late in July, 1945. Respondent testified that the last time she had seen her husband was in November, 1945. The brother of the husband testified that the husband had lived with him since about January, 1944.

When the child was born in April of 1946, respondent told the hospital authorities that her husband was the father of the child, and she registered the child with the hospital in that fashion, and directed that the birth certificate so declare. She testified that she did this at the suggestion of appellant, but that she also gave the child the first two names of "Benjamin James" (which are the first two names of appellant) at his request.

On this evidence the trial court found that appellant was the father of the child. That finding is undoubtedly supported if, on any theory, the above evidence was admissible. The trial court made no findings at all in reference to the marriage of respondent and the date of separation, and, in particular, made no finding as to whether or not the husband of respondent had access to respondent during the crucial period here involved.

The judgment cannot stand. Section 1962, subdivision 5, of the Code of Civil Procedure provides: "The issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate." That is a conclusive presumption. Subdivision 31 of section 1963 of the Code of Civil Procedure lists as a disputable presumption: "That a child born in lawful wedlock, there being no divorce from bed and board, is legitimate." Subdivision 28 of the same section lists another disputable presumption as follows: "That things have happened according to the ordinary course of nature and the ordinary habits of life." Section 193 of the Civil Code

provides that "All children born in wedlock are presumed to be legitimate." Section 194 makes that presumption continue for ten months after the "dissolution of the marriage." Section 195 provides that the only persons who can dispute the presumption of legitimacy are "the husband or wife, or the descendant of one or both of them." (See *Gonzales* v. *Pacific Greyhound Lines,* 34 Cal.2d 749 [214 P.2d 809].)

Obviously, there is some confusion in these sections. Under some of them the presumption of legitimacy is conclusive, while under the others the presumption is rebuttable by certain designated persons. But, despite this confusion, one thing is quite clear. If a child is born nine months after marriage, or was conceived before its dissolution (here the child was born six months after the interlocutory), and the husband had the opportunity of access to his wife during their marriage, and the husband is not impotent, the presumption of legitimacy is conclusive, subject only to certain exceptions not here involved. This was firmly established in 1902 by the *Estate of Mills,* 137 Cal. 298 [70 P. 91, 92 Am.St.Rep. 175]. In that case evidence was admitted that supported the finding that, although the husband and wife were living in the same house for several years before and after the child was born, Mills, and not the husband, was in fact the father. The judgment was reversed. The court pointed out (p. 303) that: "Where the law makes a certain fact a 'conclusive presumption' evidence cannot be received to the contrary. . . . Illegitimacy may be proved; but it cannot be proved by the evidence of a husband or wife that while living together they did not have sexual intercourse." The court concluded its opinion as follows (p. 304): "The modern rule was stated by Lord Langsdale in *Hargrave* v. *Hargrave,* 9 Beav. 552, as follows: 'A child born of a married woman is in the first instance presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse.' And the same rule is supported by the authorities in this country. [Citing authorities.] But

the above rule does not allow either of the parents to testify to the fact of non-access during cohabitation. Nor is the rule inconsistent with the conclusive presumption that a child begotten and born while the husband and wife are living together as such, and the husband not impotent, is legitimate.''

The *Estate of Mills* has been reaffirmed in many later cases discussing the problem. In *Estate of Walker,* 180 Cal. 478 [181 P. 792], twin sons were born nine months and eight days after the parties received an interlocutory decree of divorce. It was held that the presumption of legitimacy, under such facts, was conclusive, subject only to very limited exceptions not here involved. At page 484 it is stated: ''There is no doubt but that the presumption of legitimacy goes at least to this extent, that if it appear that by the laws of nature it is possible that the husband is the father (that is, if it appears that the husband had intercourse with the mother during the period of possible conception), legitimacy is conclusively presumed, and no guessing or weighing of probabilities as to paternity because of relations between the mother and other men will be permitted. The only exception to this, if it really be an exception, is where it is clear that, although the husband had intercourse with the wife, yet by the laws of nature it is impossible for him to have been the father, as, for instance, where husband and wife are white and the child a mulatto.'' The court reiterated this rule throughout its opinion. At page 491, after reviewing many English and American authorities, it restated the rule as follows:

''. . . the true rule in America, as well as England, is, we believe, that if it is possible by the laws of nature for the husband to be the father (that is, if there was coition and no impotency), no inquiry will be permitted into the probabilities of the case one way or the other, but the presumption of legitimacy is conclusive; and, on the other hand, it is always permitted to show that it was not possible by the laws of nature for the husband to be the father, as by showing impotency on his part, want of intercourse during the possible period of conception, or that the child is of a race or color such that it could not have been conceived by the husband.

''The fact that it was not possible by the laws of nature for the husband to be the father, where that fact is in issue, is to be inquired into in the same manner as any other fact which is the subject of judicial inquiry, and any competent evidence relevant to the question is admissible as in other cases, it being the rule, however, in California, as in many jurisdictions, that

neither the husband nor the wife is competent to testify to lack of intercourse.''

It is thoroughly settled by these and other cases that if there was access to the wife by the husband during the period that conception normally would occur, the presumption, except in certain cases not here relevant, is conclusive. (*People* v. *Kelly*, 77 Cal.App.2d 23, 26 [174 P.2d 342] ; *Dazey* v. *Dazey*, 50 Cal.App.2d 15, 17 [122 P.2d 308] ; *People* v. *Hamilton*, 88 Cal.App.2d 398, 400 [198 P.2d 907].)

Thus, the key question is whether the husband did or did not have access to his wife during the period that the child must have been conceived. If he had the opportunity for such access, the presumption of legitimacy is conclusive, inasmuch as the child was admittedly conceived while respondent was married. On this pivotal question all the evidence is to the effect that during June and July of 1945 the husband had access to respondent. Under oath respondent averred that she had ''separated'' from her husband on May 29, 1945, but that as late as June 29, 1945, she was living in the same house with him. Appellant testified that he met the husband in respondent's home in late July of 1945. As opposed to this testimony respondent did testify that she had ''separated'' from her husband as early as March of 1945, and had not had intercourse with him since the ''separation.'' But ''separation'' is not the test. To prevent the strong conclusive presumption from arising where the child is conceived during marriage, the evidence must be clear and convincing that there in fact was no access, not simply that the parties were separated. If there is the reasonable possibility of access, the conclusive presumption arises and testimony as to non-intercourse is totally incompetent. The testimony of the husband's brother that the husband had lived with him in the same city as respondent does not prove nonaccess. Thus, it would appear that the record demonstrates that the husband had access to respondent during the crucial period, and that, therefore, the child must be conclusively presumed to be legitimate.

Even if this were not so, the cause would have to be reversed for another reason. The trial court simply found that appellant was the father of the child in question. It made no finding at all on the pivotal issue of the husband's opportunity of access. Without such a finding, in view of the admitted fact that there was a valid marriage in existence at the time of

conception, the judgment cannot stand. In such a case, before a stranger to the marriage can be held to be the father of such a child, the court must find, or the evidence must indisputably show, lack of access by the husband. If the evidence is conflicting on this issue, it becomes the basic issue in the case. To fail to find on it in such a case is the failure to find on a material issue which compels a reversal.

The judgment appealed from is reversed.

Bray, J., and Schottky, J. pro tem., concurred.