[Civ. No. 17839.   First Dist., Div. One.   Dec. 12, 1958.]

EUDOXIE WATERS, Respondent, v. BURNIS SPRATT, Appellant.

Wesley E. Helm, Bernal & Bernal and Joseph W. Bernal for Appellant.

George W. Norris and Ralph B. Westlake for Respondent.

WOOD (Fred B.), J.—Judgment was rendered determining that defendant is the natural father of plaintiff's child and ordering him to pay plaintiff $40 a month for the support of the child.

This judgment was supported by the findings of fact first filed but those findings were silent on two of the issues framed by the pleadings: whether plaintiff during the period of con-

ception of the child was married to one Lawrence Waters and whether Lawrence had access to plaintiff during that period.

Defendant moved to set the judgment aside and enter a different judgment upon the ground that the conclusions of law were incorrect and not supported by the findings. He predicated his motion upon section 663 of the Code of Civil Procedure.

Plaintiff moved to amend the findings by adding one to the effect that plaintiff was married to Lawrence but that Lawrence did not have access during the period of conception. She predicated her motion upon section 473 of the Code of Civil Procedure.

The court denied both motions and ordered the *nunc pro tunc* filing of substituted findings which were the same as those first filed plus findings that Lawrence was married to plaintiff but did not have access to plaintiff at the time of conception.

The order for substitution contained these statements, among others: ". . . the Court, after hearing and considering said evidence, resolved the issue aforesaid in favor of plaintiff and against defendant, in that the said Lawrence Waters did not have access to plaintiff at the time aforesaid. That it was the intention of the Court that his findings on the issue of access, as aforesaid, be included in the Findings of Fact and Conclusions of Law, filed and entered in this action; that said court was under the impression that a finding on the issue of access was contained in said Findings of Fact heretofore signed and entered, but that through mistake and inadvertence said finding was not included in the Findings of Fact and Conclusions of Law, heretofore filed and entered herein."

Defendant has appealed from the judgment, from the order denying his motion to vacate that judgment and enter a different judgment, and from the order which directed the *nunc pro tunc* filing of the substituted findings.

(1) *The substituted findings determine all material facts in issue and are supported by the evidence.* They, in turn, support the conclusions of law and the judgment.

Defendant questions the sufficiency of the evidence solely in relation to the finding that the husband did not have access during the period of conception, which period was during August and September of 1954.

Plaintiff testified that she did not have sexual relations with her husband after August 1953, at which time she separated

from him. She denied that he called upon her during August or September, 1954, testifying that he was out of town at the time, in Las Vegas. The first time she saw him after their separation was in May of 1955, while she was pregnant. She later said she was about three or four months pregnant at the time she saw him, which would put the date back to about December of 1954, but she was positive she was pregnant when he returned from out of town.

Waters, the husband, testified that he separated from plaintiff in August of 1954, stayed in Las Vegas for about a year and a half, and when he next saw her, plaintiff was pregnant. He denied seeing her in September, 1954. He was apparently confusing August of 1953 with August of 1954, because, after his recollection was refreshed with the date of his marriage (March 9, 1953) he stated they were separated six or seven months thereafter, and that he did not see her in August or in September, 1954. This would be consistent with his testimony that he was away about a year and a half or almost two years, and that plaintiff was pregnant upon his return.

Plaintiff's mother testified that plaintiff and her husband separated in August of 1953, whereupon plaintiff came back home to live with her, and plaintiff's mother did not see Waters again until plaintiff was about five months pregnant.

Charles J. Wright, a deputy district attorney, testified that he discussed the paternity of the child with plaintiff in February, 1955, and she then told him she had seen her husband in September of 1954.

Dorothy Atkins testified that plaintiff's husband had visited plaintiff at her house in August or September of 1954. On rebuttal, plaintiff's mother denied this, as did her father.

The only testimony of access is that of Dorothy Atkins, and the prior statement plaintiff herself made to Mr. Wright, the deputy district attorney. Defendant relies principally on Mr. Wright's testimony, and the fact that plaintiff did not deny making this statement. (Her testimony was that she could not remember making this statement.) From the latter circumstances, defendant concludes that Mr. Wright's testimony was uncontradicted. The fact of making the statement was not directly denied, but the fact that the admission would tend to prove access was contradicted not only by plaintiff's testimony, but by her husband's and that of her mother and father, with whom she was living at the time.

Evidence of an admission is not conclusive of the facts stated in the admission or of the inferences to be drawn from

them. (*Gradwohl* v. *Harris*, 29 Cal. 150, 155; *Smith* v. *Whittier*, 95 Cal. 279, 297 [30 P. 529]; 19 Cal.Jur.2d p. 163, § 417.)

■ This being the case, it cannot be said that the finding of nonaccess is unsupported by the evidence, or that the court should have found access as a matter of law.

Defendant mistakenly relies upon language in *Williams* v. *Moon*, 98 Cal.App.2d 214, 219 [219 P.2d 902], that "If there is the reasonable possibility of access, the conclusive presumption arises and testimony as to non-intercourse is totally incompetent." All the testimony was to the effect that the husband had access to the wife during the time the child was conceived, about July, 1945. The only contrary testimony was that the wife had "separated" from her husband before that time and had not had intercourse with him since the "separation." However, they were living in the same house until at least June 29, 1945, and there was uncontradicted testimony that the husband was in the wife's home at least once late in July, 1945. *Hill* v. *Johnson*, 102 Cal.App.2d 94, [226 P.2d 655], also cited by defendant was a similar case where the husband and wife lived in the same house during the period of possible conception. *Estate of Mills*, 137 Cal. 298, 304 [70 P. 91, 92 Am.St.Rep. 175]; *Estate of Walker*, 176 Cal. 402, 408 [168 P. 689], and 180 Cal. 478, 481 [181 P. 792], and *Hargrave* v. *Hargrave*, 9 Beav. 552, all relied upon in *Williams* v. *Moon*, recognize as sufficient to overcome the presumption of legitimacy a showing that the husband was entirely absent, so as to have no intercourse or communication of any kind with the mother or entirely absent at the time when the child must, in the course of nature, have been begotten. In *Estate of Walker*, *supra*, 180 Cal. 478, 491, the court stated that such a showing to overcome the presumption is subject to the ordinary rules concerning the burden of proof. "A jury would be justified in finding a lack of intercourse, with the consequence that it was impossible that the husband be the father upon evidence which did not show such lack beyond possibility of question. The presumption of legitimacy is strong and the proof of impotency or nonintercourse must be clear and satisfactory, but this is all. The presumption does not operate to change the general rule that in civil cases the issue is to be determined upon the preponderance of evidence, but like other presumptions operates under and beneath that rule." (180 Cal. 492.)

Here, there was directly conflicting testimony on the question whether or not the plaintiff's husband was out of town

during the possible period of conception. In these circumstances, the court was not obliged as a matter of law to find access. Its finding of nonaccess was sufficiently supported by the evidence.

■ (2) *The trial court, for the purpose of correcting a clerical error, had authority, upon its own motion after judgment, to make corrected findings and order them filed nunc pro tunc as of the date of the original finding.*

"*The court may,* upon motion of the injured party, or *its own motion, correct clerical mistakes* in its judgment or orders as entered, so as to conform to the judgment or order directed . . ." (Code Civ. Proc., § 473, emphasis added.) In *Bastajian* v. *Brown,* 19 Cal.2d 209 [120 P.2d 9], the trial court ordered judgment for defendants. More than a year later findings of fact, conclusions of law and judgment were presented to the court and signed and filed. Later, upon motion by defendants, the findings and judgment were vacated and the defendants directed to prepare findings of fact and conclusions of law in accordance with the court's decision. The order of vacation declared that the findings and judgment first signed did not conform to the true judgment rendered by the court and pointed out in detail wherein they differed from the judgment the court intended to render. That order also found that the judgment was rendered against the defendants through inadvertence, mistake, surprise and excusable neglect, and that the presentation of the findings theretofore signed constituted a fraud and deception practiced upon the court in misrepresenting and misstating the true decision of the court after the lapse of a long period of time.

The reviewing court found it unnecessary to consider any ground for the trial court's action except "its inherent power . . . to vacate and correct its judgments, which because of clerical error are improvidently or inadvertently made" (19 Cal.2d 214) and affirmed the trial court's order, stating that the finding that the findings and judgment " 'do *not conform to and set forth* the *true judgment* rendered by the court, in that the court *intended* to pronounce judgment . . . in favor of the defendants upon all the issues presented . . .' " (p. 214) was sufficient to support the order, and the "trial court's finding upon conflicting evidence that a clerical error exists and the nature thereof, is conclusive" on appeal (p. 215). The findings in the order were said to be "a declaration of a fact that was concealed in the mind of the judge, and no one was in a better position than he to state his true intent." (P. 214.)

Here, defendant's sole argument appears to be that the error was judicial and not clerical. *Morgan* v. *State Board of Equalization*, 89 Cal.App.2d 674 [201 P.2d 859], reviews the case law on what constitutes clerical misprision and what constitutes judicial error. The court concluded at page 682: "From these cases, it appears that the rules to be followed in determining whether an error is clerical or judicial so that the court may have the power to correct it by amendment, are as follows: (1) No serious problem is involved where the correction is to include a matter inadvertently omitted, such as the grounds for granting a new trial, or where the error is plainly clerical. (2) The serious problem arises where the amendment is substantially different from the original order or substantially changes the rights of the parties. In such cases, if the court is purporting to correct a clerical error, it should say so, or there should be something in the record to show it. (3) Where there is conflicting evidence as to whether the error was clerical the reviewing court will probably accept the conclusion of the trial court. [Citation.] If the record shows clearly that there was no clerical error, the recital by the trial court will not be conclusive." (See also *Nathanson* v. *Murphy*, 147 Cal.App.2d 462, 469 [305 P.2d 710].)

Applying these criteria here, the trial court was including omitted matter that clearly should have been included. The omitted findings pertained to issues which were extensively explored at the trial, and the trial judge could hardly have failed to realize that they pertained to material issues on which findings should have been made. Inserting these findings did not substantially change the rights of the parties, insofar as these rights were expressed in the judgment. The defendant, in the then state of the record, would have been entitled to a reversal on appeal because of the absence of these findings, but unless a litigant can be said to be entitled to two trials the amendment cannot be said to affect his substantial rights. On the contrary, the very fact that the judgment could only have been predicated upon the substituted findings lends support to the trial judge's declaration that it was his intention to find on the issues covered by the substituted findings.

(3) *Defendant's motion for relief under section 663 of the Code of Civil Procedure was properly denied.*

That section deals with the correction of "[i]ncorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact."

Here, the conclusions of law were "consistent with" and "supported by the findings of fact" first filed.*

Defendant mistook his remedy when he sought relief under section 663. In *Jones* v. *Clover*, 24 Cal.App.2d 210 [74 P.2d 517], an order in a proceeding under section 663 which purported to set findings of fact aside and substitute new findings was held "ineffectual for any purpose, as the court was limited to the substitution of the judgment that should have been given as a matter of law upon the findings of fact, if the judgment already given was an incorrect conclusion from such findings." (P. 212.)

The judgment and the orders appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 4, 1959.

---

*Those findings were that plaintiff was the child's mother, defendant was its father, the parties were not married to each other, defendant had not contributed to the child's support, and that $50 a month is a reasonable amount for such support and is within defendant's ability to pay.