[Civ. No. 18957.   First Dist., Div. Two.   Oct. 26, 1960.]

OZELL MATHIS, Respondent, v. JOSHUA WILLIAMS, Appellant.

Edward L. Cragen for Appellant.

Herman W. Mintz, John A; Gunning and Ralph Nathanson for Respondent.

McGOLDRICK, J. pro tem.*—Respondent filed an action to establish appellant as the father of her child born on December 7, 1956, and to enforce support obligations, pursuant to the provisions of 196a, Civil Code. The trial court found appellant to be the father of the child and ordered him to pay support money. Appellant moved for a new trial which was denied and appeals from that order and from the judgment.

From the settled statement, the following appears: Respondent was the wife of one Andrew Mathis when the child was conceived. She was never divorced, although separated from him on December 16, 1955. She testified she was never alone with him after that date. Both spouses testified that they had no sexual intercourse with each other since their separation. A conflict exists in the evidence as to whether Mathis had personally seen respondent following the separation, viz., the probation officer who had been charged with supervising Mathis during the period from December 1, 1955, through July 1956, testified that respondent had complained to him on many occasions from the latter part of December 1955, through February 1956, that her husband was "bothering" her and that respondent had stated that Mathis had broken into her kitchen, beaten her and thrown groceries around. Respondent, however, denied ever having called the officer to make such complaints. Mathis testified that on March 2 at or about 1 o'clock a.m., he attempted to see respondent but had been arrested in the hallway at the address where she was staying, for disturbing the peace. A properly authenticated police report indicated that respondent had been the complaining witness, although respondent denied this. Mathis

---

*Assigned by Chairman of Judicial Council.

testified he had been incarcerated thereafter until April 12, 1956, for this offense, plus an additional conviction for non-support of respondent's other child. In this connection, however, respondent testified that Mathis was released from custody on April 8, 1956, and she had seen him for the first time since their separation on April 11 and again in June of 1956. Both times, he was in the company of appellant. Later on in her testimony, respondent denied having seen or talked to Mathis from December 16, 1955, to and including April 11, 1956.

Respondent testified she met appellant on March 19, 1956, and first had intercourse with him on the night of March 23, 1956, although she later admitted she was not certain of the latter date; that she subsequently had intercourse with appellant two or three times a week until July 21 or 23, 1956. Appellant, however, testified he met respondent in a bar on or about April 28, 1956. He offered evidence, both documentary and through the testimony of other witnesses, which indicated he had been at work on the night of March 23, 1956. He admitted, however, he had visited respondent at her home on the night following their first meeting and that their first act of intercourse had occurred that week end and that intercourse had continued one, two, three or more times a week until approximately July 22, 1956, the date on which he had been served with summons and complaint in the instant action.

Respondent's mother testified that following her return from Ohio on April 8, 1956, appellant had frequently taken respondent away with him for entire week ends, leaving respondent's other child to be cared for by her and that she had seen appellant and respondent in bed together on May 1 or 2. Respondent's stepfather testified he had seen appellant in bed in respondent's house and that appellant had definitely been with respondent on April 11, 1956. On cross-examination, he testified that this event occurred in May 1956, until he was interrupted by the court and informed he testified on direct that it occurred in April 1956. He then changed his testimony on cross to state that it had in fact occurred in April of 1956. Appellant, however, testified he first met respondent's mother and stepfather in the early part of May 1956, and that he did spend a night with respondent in her mother's presence. Respondent testified that she first suspected she was pregnant on April 12, 1956, because she missed her menstrual period on that day, her last having occurred March 12, 1956. She also testified she discussed her pregnancy with appellant in April

1956, in the presence of two friends, and that appellant had commented at that time to a pregnant friend that "you and . . . [respondent] will probably go to the hospital at the same time." The friend testified that appellant said "We are going to have one, too," and that during April and May 1956, she had seen appellant in bed in respondent's house three or four times a week. Appellant stated that in the latter part of May, he thought respondent had begun to show signs of pregnancy and he had first discussed such possibility with her during that month; that in answer to his inquiries as to what she thought and who was responsible, respondent had replied "she did not think nothing," "What do you think?" respectively and he stated in reply "I don't know." Respondent denies ever having said or believed he was the father of respondent's child.

Respondent stated that in June she had another conversation with appellant in which he asked her if she had missed her period, and she said "No," and that in July 1956, when he asked again, he had said that whatever he gave respondent would be to her advantage, and that on July 13, 1957, appellant had given her $16 and had told her to see a doctor, that he would pay the hospital bill for the child's birth by December 1957. In this connection, the appellant stated he had given respondent $16 for a doctor's bill but she had not mentioned that it was for her pregnancy and denied he ever at any time offered to pay a doctor's bill in connection with the child's delivery.

Appellant argues that where there is a reasonable possibility of access between husband and wife, though living apart, during the period in which conception of a child would normally have occurred, an indisputable presumption of the child's legitimacy arises and evidence of lack of sexual intercourse between spouses is totally incompetent.

Section 1962, subdivision 5, of the Code of Civil Procedure provides: "*Notwithstanding any other provision of law,* the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate." Moreover, by judicial construction, the scope of this statutory presumption has been broadened beyond the concept of cohabitation as such, so as to throw the protective cloak of legitimacy around a child where, by the laws of nature, it is possible for the husband to be the father of his wife's child. (8 Cal.Jur.2d 256, 257.)

In the case of *Williams* v. *Moon,* 98 Cal.App.2d 214 [219

P.2d 902], the court pointed out that the conclusive presumption arises only when access to the wife by the husband existed during the period that the child must have been conceived, and whether or not such date in fact exists may be inquired into in the same manner as any other fact which is the subject of judicial inquiry.

In *Waters* v. *Spratt*, 166 Cal.App.2d 80 [332 P.2d 754], there was directly conflicting testimony as to whether or not respondent's husband had access to her during the possible period of conception. "In these circumstances, the court was not obliged as a matter of law to find access. Its finding of nonaccess was sufficiently supported by the evidence." (P. 85.)

In *Williams* v. *Moon*, *supra*, the court held that the failure to find on the pivotal issue of the husband's opportunity of access is reversible error where that fact is in dispute. Here, there was no finding that the husband had access. While the evidence showing access in the instant case is weak, it nonetheless raises a dispute of sufficient moment to necessitate a finding of lack of access by the husband, if such were the law today. [■■] Since the instant case was tried, the Supreme Court has reviewed the subject matter in the case of *Kusior* v. *Silver*, 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657]. Here, the court definitely holds that cohabiting as used in the Code of Civil Procedure, section 1962, subdivision 5, as amended in 1955, declaring that the issue of a wife cohabiting with her husband who is not impotent, is indisputably presumed to be legitimate, should be construed to mean living together as husband and wife; that the primary etymological meaning of "cohabit" and "cohabitation" is living with or together, from the Latin "co-" ("co-" signifies in general with, together, in conjunction, jointly, and habitare to dwell, to have possession of (a place)). The court in this case disapproves of language giving or suggesting a broader meaning in any of the cases in the District Courts of Appeal, i.e., *People* v. *Kelly*, 77 Cal.App.2d 23 [174 P.2d 342]; *Williams* v. *Moon*, *supra*, 98 Cal.App.2d 214 [219 P.2d 902]; *Hill* v. *Johnson*, 102 Cal.App.2d 94 [226 P.2d 655]; *Estate of Marshall*, 120 Cal.App.2d 747 [262 P.2d 42]; *Waters* v. *Spratt*, *supra*, 166 Cal.App.2d 80 [332 P.2d 754]; and *Bonsall* v. *Bonsall*, 169 Cal.App.2d 753 [337 P.2d 843].

[■] A review of the entire settled statement fails to reveal one scintilla of evidence that would support a finding that respondent and her husband Mathis cohabited together as that term has been defined in the Kusior case so as to apply

the conclusive presumption of legitimacy. Moreover, since there was no evidence of cohabitation and, therefore, no dispute, a finding that the husband did or did not cohabit with his wife was unnecessary. (*Winsette* v. *Winsette,* 47 Cal. App.2d 308 [117 P.2d 897].)

In order to avoid confusion as to whether the rule announced in the Kusior case is determinative of the issues on this appeal, it should be pointed out that the earlier decisions (In *Estate of Mills,* 137 Cal. 298 [70 P. 91, 92 Am.St.Rep. 175], and *Estate of Walker,* 180 Cal. 478 [181 P. 792]) are consistent with the present holding of the Supreme Court in Kusior, *supra,* and the other cases referred to were cases in which the District Courts of Appeal have erroneously broadened this definition. The record, therefore, discloses no error and the judgment is supported by the evidence.

The order denying motion for a new trial is not appealable and the appeal therefrom is dismissed. The judgment is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.