[Civ. No. 13195. Third Dist. Mar. 9, 1972.]

COUNTY OF SANTA CLARA, Plaintiff and Appellant, v.
JAMES M. HALL, as Secretary, etc., et al., Defendants and Respondents.

## COUNSEL

William M. Siegel, County Counsel, and Norman E. Matteoni, Deputy County Counsel, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and John Fourt, Deputy Attorney General, for Defendants and Respondents.

## OPINION

TAYLOR (Warren), J.*—This is an action for declaratory and injunctive relief initiated by plaintiff, County of Santa Clara, as a fiscal partner of the State of California under the "county option" provision of the Medi-Cal Program. It is directed against two State of California agencies, the Human Rela-

*Assigned by the Chairman of the Judicial Council.

tions Agency and the Department of Health Care Services, which administer the Medi-Cal Program.

Santa Clara County operates the Santa Clara Valley Medical Center, a licensed general hospital, sometimes known as the "county hospital." It seeks to determine its right to coverage of certain health care costs incurred in hospital treatment of county jail prisoners and juvenile court wards under the "county option" provision of the Medi-Cal Program as found in Welfare and Institutions Code section 14150.1; and, second, to restrain defendants from denying such coverage.

I

Generally, prior to the Medi-Cal Program, the Santa Clara Valley Medical Center provided care to the indigent of Santa Clara County. Upon introduction of the Medi-Cal Program its role changed. It was placed in competition with private hospitals because Medi-Cal patients were allowed a choice of medical facilities for treatment. But, a group of citizens, not covered by Medi-Cal and yet unable to afford medical care, remained the responsibility of plaintiff's hospital. This group of medically indigent persons included prisoners and juvenile court wards admitted for treatment at the hospital.

When the Medi-Cal law was proposed in 1965 there was concern among the counties that the competition of private hospitals with county hospitals would increase the costs of the latter hospitals. The provision establishing the county's contribution or share of cost obligation to the state Health Care Deposit Fund under the Medi-Cal Program was set out in proposed Welfare and Institutions Code section 14150.[1] Generally, it required contribution by the county to the Health Care Deposit Fund of certain specified sums plus an amount equal to 90 percent of the county cost of health care, uncompensated from any source in fiscal year 1964-1965 (the "base year"), for all categorical aid recipients and other persons age 65 and over in the county medical institutions. Some counties were concerned that this method of contribution to the Health Care Deposit Fund would leave them with insufficient funds to provide hospital care for those persons not eligible for Medi-Cal.[2] To protect those counties, a new provision, section 14150.1, known as the "county option," was urged upon the Legis-

---

[1] All citations are to the Welfare and Institutions Code unless otherwise noted.

[2] The county's role in the program was two-fold: It was both a fiscal partner making payments of its contribution into the state Health Care Deposit Fund established under section 14157, and a vendor providing health care services which were billed to and paid from the Health Care Deposit Fund. The defendants administered the Health Care Deposit Fund.

lature and was adopted. The option provided, to each county electing its benefits, a plan whereby the county's contribution to the Health Care Deposit Fund would not exceed the total county costs of health care, uncompensated from any source in 1964-1965, for all categorical aid recipients and all other persons in the county hospital, adjusted annually for population increases.

The impetus for the Medi-Cal law was the federal participation available under the 1965 amendments to the Social Security Act. Generally, the financing of the Medi-Cal Program is participated in by the federal, state and county governments. However, under the "county option" provision, federal participation was not available because the option was not a part of the federal law. Thus, it was financed only by the state and the counties.

The Medi-Cal law became operative March 1, 1966. Sections 14150 and 14150.1 were part of it. As of March 1, 1966, plaintiff elected to pay its share of cost into the program under the "county option" provision and has operated on this basis at all times involved in this action.

Plaintiff included in its cost of health care, uncompensated from any source in the base year 1964-1965, services provided in its county hospital to inmates of county jails, juvenile halls and other custodial or correctional institutions. The base year calculation for plaintiff under section 14150.1 was the sum of $7,679,410; and each year of its participation plaintiff paid its share of the program based upon that amount as adjusted by a population factor.

Plaintiff has billed and received payment from the Health Care Deposit Fund for services, otherwise uncompensated from any source, furnished in its county hospital to inmates of county jails, juvenile halls and other custodial or correctional institutions from March 1, 1966, through September 30, 1971.[3]

The recipients of the services for which plaintiff has billed and received payment from the Health Care Deposit Fund were admitted to its county hospital as patients and classified as "medically indigent" after a credit check by the hospital. The hospital had no separate ward or wing devoted to county jail prisoners or juvenile court wards; and it accepted no responsibility for insuring that such patients would not escape.

Plaintiff has neither billed the Health Care Deposit Fund nor received payment for, and does not seek payment for, health care services provided

---

[3]The controversy ends on this latter date because the "county option" statute (§ 14150.1) was repealed effective October 1, 1971. (Stats. 1971, ch. 577, §§ 42 and 55.)

in its county jail or juvenile halls by nurses and physicians employed by the county.

Defendant Human Relations Agency (at that time the Health and Welfare Agency) in April 1967, after extensive discussions with the counties, issued its directive "PRINCIPLES GOVERNING OPTION COVERAGE SECTION 14150.1, W&I CODE." These principles furnished a definition and interpretation of the option coverage for those counties that elected to place themselves under section 14150.1. Specifically, paragraph II G stated: "Medical services provided to inmates of the county jail, juvenile hall or other custodial or correctional institutions are not included." No distinction was made between inmates who received medical attention within the correctional institution and those who were transferred to county hospitals for medical treatment.

On December 5, 1969, defendant Department of Health Care Services demanded: (1) Plaintiff recompute its base year of 1964-1965 to exclude from its share of cost obligation to the Health Care Deposit Fund an amount representing the services provided in its hospital to inmates of public, nonmedical institutions, and (2) plaintiff reimburse the defendants for that portion of state monies received by plaintiff for those excluded services.

The trial court held that the Medi-Cal Act excludes from the plaintiff's share of cost obligation to the Health Care Deposit Fund under section 14150.1 et seq., the cost of medical care provided in fiscal year 1964-1965 by plaintiff's hospital to inmates of the county jail, juvenile hall and other county public institutions. The trial court further held that the Medi-Cal Act excludes from plaintiff's billings to the Health Care Deposit Fund, under section 14150.1 et seq. for the period March 1, 1966, to May 10, 1971, the cost of medical care provided by plaintiff through its hospital to the inmates of the county jail, juvenile hall and other county public institutions.[4]

Plaintiff has appealed, contending that the "county option" provision is a state-county health care program completely separated from the general Medi-Cal Program.

---

[4]The judgment further disposed of a special defense posed by the defendants and concluded that the court had jurisdiction to determine Santa Clara County's base costs for the 1964-1965 fiscal year. The judgment accepted the stipulation of the parties by which they agreed to establish a new Santa Clara County share of costs under the Medi-Cal Act and new billings by the county to the state for the period March 1, 1966, to date. Jurisdiction of the cause was retained so that each party could, upon 20 days' notice, apply to the court for appropriate post-judgment orders establishing the monetary liability of each.

## II

The California Medi-Cal Act was introduced in the Second Extraordinary Session of 1965. Prior to its enactment it went through a series of amendments. The relevant provisions, other than sections 14150 and 14150.1, heretofore discussed, are section 14050, which provides: "Unless the context otherwise requires, the definitions set forth in this article [§§ 14050-14062] govern the construction of this chapter [§§ 14000-14160]" and section 14053, which read in pertinent part: " 'Health care and related remedial or preventive services' means:

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"15. Except that such term shall not include    a.  Any care or services for any individual who is an inmate of a public institution (except as a patient in a medical institution); . . ."[5]

There seemingly is an inconsistency between section 14150.1, in its provision for payment by the county of 100 percent of the cost "uncompensated from any source in 1964-1965 for all categorical aid recipients, and all other persons in the county hospital," and section 14053 which, in defining "health care," excludes service to prisoners and juvenile hall wards. The trial court concluded that when section 14150.1 refers to the county costs of "Health care . . . for . . . all other persons" it means such care as defined in section 14053, which excludes health care to prisoners and juvenile hall wards, because section 14050 provides that the definitions in section 14053 govern unless the context otherwise requires. The trial court said: "The context does not otherwise require, despite the legislative history. When the Legislatiure chose to go beyond the scope of Federal Medicaid, it was free to go as far as it wished, and stop wherever it reasonably wished. It is not logical to assume that the insertion of an amendment to pending legislation was intended to modify other portions thereof so as to make them inapplicable to the amendment. Pending legislation is constantly being amended before passage, and it is not reasonable to assume that the proponent of the amendment does not have in mind the legislation in its entirety and how it affects this amendment; particularly is this so with specific definitions which must have been obvious and which are certainly to be encouraged as clarifying pending legislation. Furthermore, the court notes that both Section 14053 and Section 14150.1 have been in fact

---

[5]Section 14053 was amended by Statutes 1969, chapter 21, to read:
" 'Health care and related remedial or preventive services' means:
"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .
"Such term shall not include, except to the extent permitted by federal law: a. Any care or services for any individual who is an inmate of a public institution (except as a patient in a medical institution); . . ."

amended since their original enactment, without any substantial change to their wording and purport. At the outset of the amendment, it would have been simple to also propose an amendment to Section 14053 to make its restrictive definition inapplicable to the county option of Section 14150.1. To adopt plaintiff's interpretation would be to do violence to the presumed intention of the Legislature that the plain meaning of the various provisions of an act should uniformly apply to all the other provisions."

■ The legislative history of the Medi-Cal Act supports the conclusion reached by the trial court. The act originated with the introduction of Assembly Bill 5 on September 21, 1965, in the 1965 Second Extraordinary Session of the Legislature. The provisions in the act (§ 14050) that the definitions, including section 14053, should apply to sections 14000-14160 was contained in the original bill. The "inmate" exclusion was added to section 14053 of the bill by an Assembly amendment of October 11, 1965. This language remained in AB 5 through the six successive amendments made October 13, 21, 25, 27, and 28, and November 21, 1965. The Assembly added the "county option" provisions to section 14150 of AB 5 on October 25, 1965. In this amendment, the Assembly twice used the phrase "county costs of health care" and did so in the light of the previously adopted definition of "health care" contained in section 14053 which excluded costs of health care provided to inmates. The Senate on October 27, 1965, struck the option language from section 14150 of AB 5 and placed it in a new section 14150.1. The phrase "county costs of health care" is used three times in section 14150.1. Repetition of this term in section 14150.1 indicates it was referring to its definition in section 14053 with its attendant exclusions. (See *Trediani* v. *Ota* (1963) 215 Cal.App.2d 127, 133 [29 Cal.Rptr. 912]; *Woodmansee* v. *Lowery* (1959) 167 Cal. App.2d 645, 650 [334 P.2d 991].) ■ The Legislature is presumed to know "what it was saying and [to mean] what it said" when it enacts and amends legislation. (See *Pepper* v. *Board of Directors* (1958) 162 Cal.App.2d 1, 5 [327 P.2d 928].)

■ Although the precise meaning of section 14053 is unclear, the interpretation of the trial court derives support from the fact that the exclusionary words in subdivision 15a of section 14053 would have no effect, in view of the reference to "inpatient hospital services" appearing in subdivision 1 of that section, if a contrary interpretation were made. Clearly, "inpatient hospital services" would require the recipient of such services to be a "patient in a medical institution." Therefore, if effect is to be given to the exclusionary language of subdivision 15a, "health care" must exclude services to individuals who are inmates of public institutions, other than medical institutions, even if such inmates are moved to a medical institution and become patients thereof.

In April 1967, after much discussion with the counties, the state issued its "PRINCIPLES GOVERNING OPTION COVERAGE," which stated: "Medical services provided to inmates of the county jail, juvenile hall or other custodial or correctional institutions are not included [within the reimbursement provisions of the 'county option' portion of the Medi-Cal Act]."

Section 14053 was amended subsequent to 1965 (Stats. 1967, ch. 1585; Stats. 1968, ch. 218; Stats. 1969, ch. 21), and section 14150.1 was amended in 1968 and in 1969 (Stats. 1968, ch. 1264; Stats. 1969, ch. 21). The 1969 amendment of section 14053 made it clear that a person detained by legal process was not covered by the Medi-Cal Act. The other amendments did not affect the "inmate" exclusion. ■ It is a well established rule of statutory construction that "failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (*Williams* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 618, 620 [51 Cal.Rptr. 277, 414 P.2d 405]; *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 618 [7 Cal.Rptr. 129, 354 P.2d 657].)

### III

■ Plaintiff contends also that the "inmate" exception to the state's reimbursement obligations under the "county option" should not apply to inmates who are eligible for "medically indigent" benefits under the title XIX federal social security program. Reliance is placed on section 14051 which defines the phrase "medically indigent person." There is no merit to this contention. Plaintiff's case depends on the construction of section 14150.1; it is not affected by the definition in section 14051. Plaintiff chose not to participate in the standard method of county contribution under section 14150. The term "medically indigent person" was used in section 14150; it was not used in section 14150.1.

Plaintiff also argues that the "inmate" exception to the state's reimbursement obligations under the "county option" conflicts with title 22, California Administrative Code, section 50029, subdivision (b)(2). This contention also is without merit. This subdivision, at the time pertinent to this litigation, by its terms was applicable only to "otherwise eligible persons" and did not conflict with nor apply to the "county option" program.

### IV

We hold that the Medi-Cal Act excludes from plaintiff's share of cost obligation payable to the Health Care Deposit Fund under Welfare and

Institutions Code sections 14150.1, 14150.2, 14150.3, and 14155, the cost of medical care provided in fiscal year 1964-1965 by the Santa Clara Valley Medical Center to inmates of the county jail, county juvenile hall and other county custodial or correctional institutions. This holding also disposes of plaintiff's second contention. The billing of the Health Care Deposit Fund by plaintiff for this care is proper only if it were properly included in the base cost obligation of plaintiff to that fund.

The judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.