KENNARD, J.
I dissent.
In In re Marriage of Higgason (1973) 10 Cal.3d 476 [110 Cal.Rptr. 897, 516 P.2d 289], this court unanimously held that premarital agreements waiving spousal support in the event of separation or dissolution of the marriage violate California’s public policy and are therefore invalid, leaving it to the trial court to determine at the time of separation or dissolution whether to award spousal support. Three years later, in In re Marriage of Dawley (1976) 17 Cal.3d 342 [131 Cal.Rptr. 3, 551 P.2d 323], this court, again unanimously, came to the same conclusion. Our Legislature was fully *55 aware of these decisions when in 1985, in adopting provisions of the Uniform Premarital Agreement Act, it chose to omit the act’s provision allowing premarital waiver of spousal support, thus affirming the decisional law of this state that such waivers violate public policy.
In overruling by judicial fiat the Legislature’s decision to continue this state’s prohibition against premarital waivers of spousal support, the majority has (1) invaded the legislative domain, (2) invalidated a legislative decision reflecting sound public policy, and (3) failed to articulate an intelligible standard to guide members of the bench and bar in determining whether a premarital waiver of spousal support is or will be enforceable.
I cannot and do not join the majority in its usurpation of legislative powers. Any change in the law at issue should come from the Legislature, not the judiciary.
I
California statutory law generally imposes an obligation to support one’s spouse. (Fam. Code, § 4300 et seq.)
In 1985, California became one of the first states to adopt provisions of the Uniform Premarital Agreement Act. (9B West’s U. Laws Ann. (1987) U. Premarital Agreement Act (1983) p. 369.) Uniform acts are drafted by the National Conference of Commissioners on Uniform State Laws “to promote uniformity in state law, on all subjects where uniformity is desirable and practicable, by voluntary action of each state government.” (Id. at p. III.)
On March 7, 1985, Senate Bill No. 1143 (1985-1986 Reg. Sess.) was introduced in our Legislature. The bill proposed adopting the Uniform Premarital Agreement Act in its entirety. On August 28, 1985, however, the bill was amended to delete these two provisions of the act:
Section 3, subdivision (a)(4), allowing spousal support to be modified or eliminated through premarital agreements (Assem. Amend, to Sen. Bill No. 1143 (1985-1986 Reg. Sess.) Aug. 28, 1985),[1] and
Section 6, subdivision (b), providing that if, as a result of having entered into an a premarital agreement waiving spousal support, a spouse at the time *56 of separation or marital dissolution becomes impoverished and eligible for public assistance, then a court retains the authority to award support “to the extent necessary to avoid that eligibility” (Assem. Amend, to Sen. Bill No. 1143 (1985-1986 Reg. Sess.) Aug. 28, 1985).[2]
When the Legislature deleted these two provisions from Senate Bill No. 1143, two decisions of this court, In re Marriage of Higgason, supra, 10 Cal.3d 476, and In re Marriage of Dawley, supra, 17 Cal.3d 342, had held roughly a decade earlier that premarital agreements waiving spousal support violated California’s public policy and were therefore invalid. At the time of the deletion and until today’s decision by the majority, it was the trial court that determined whether to award spousal support, depending on the circumstances existing at the time of separation or dissolution of the marriage. (See Fam. Code, § 4320 [circumstances trial court should consider in awarding spousal support].)
Does the Legislature’s deletion of the provision allowing premarital waivers of spousal support establish its intent to preclude such waivers? The answer is “yes,” as I explain below.
On point is this court’s decision in Kusior v. Silver (1960) 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657] (Kusior). There, as here, the Legislature was considering the adoption of a uniform act. There, the Legislature had refused to enact into law a provision of the Uniform Act on Blood Tests to Determine Paternity allowing blood tests to show that the husband was not the father of the child. (Kusior, supra, at p. 618.) There, as here, California decisional law was contrary to the proposed provision.
This court in Kusior observed that “[statutes are to be interpreted by assuming that the Legislature was aware of the existing judicial decisions.” (Kusior, supra, 54 Cal.2d at p. 618.) We then held that in omitting from its adoption of the uniform act at issue a provision directly at odds with this *57 state’s decisional law, the Legislature’s omission “must be deemed” an intent to approve and retain the decisional law. (Ibid.) Similarly, here the Legislature’s express rejection of the Uniform Premarital Agreement Act’s provision allowing premarital spousal support waivers, in the face of decisional law to the contrary, “must be deemed” an intent to approve and retain the existing law. (See also Estate of Sanders (1992) 2 Cal.App.4th 462, 473-474 [3 Cal.Rptr.2d 536] [“ ‘[t]he rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision’ ”].)
This court’s decision in Kusior, supra, 54 Cal.2d 603, is dispositive here. Under the reasoning of that decision, our Legislature’s express rejection of the proposed uniform law provision allowing waivers of spousal support was a decision to approve and retain California’s rule prohibiting such waivers. By now deciding that premarital spousal support waivers do not violate California’s public policy, the majority has invaded the legislative domain, judicially enacting in substance a provision that the Legislature intended to reject, and judicially abrogating the rule that the Legislature intended to retain.
II
Our Legislature’s decision not to enact into law the Uniform Premarital Agreement Act’s provision allowing premarital waivers of spousal support, while adopting other provisions of the act, reflects sound public policy.
Such waivers do not allow for changed circumstances between execution of the premarital agreement and separation or dissolution of the marriage. An agreement equitable at the time of the marriage may later become inequitable and unjust. For example, the health, earning capacity, or financial resources of a spouse may change markedly during the marriage, especially one that is lengthy. An elderly spouse or one in poor health may be left destitute. The earning capacity of a spouse may be impaired by the obligations of caring for children produced by a marriage of short duration. After the marriage one spouse may elect to give up his or her career to raise the children of the marriage or to move to another location in the interest of furthering the career of the other spouse. And a spouse may substantially deplete his or her financial resources to advance the other spouse’s education, training, or career during the marriage.[3]
These considerations are reflected in the Legislature’s enactment of Family Code section 4320, which sets forth spousal support guidelines for the *58 trial courts.[4] They are also reflected in the Legislature’s express declarations that spousal support is a “serious legal obligation[]” (Fam. Code, § 4250, subd. (a)) and that it “is the policy of the State of California” to “ensure fair and sufficient” spousal support awards (id., § 2100, subd. (a)). In rejecting the proposed provision to allow premarital waivers of spousal support, the Legislature must have recognized the serious potential for injustice at the time of dissolution of marriage.
*59 That concern was succinctly expressed in a letter the Women Lawyers’ Association of Los Angeles wrote on June 6, 1985 to Elihu Harris, the Chair of the Assembly Judiciary Committee, stating its opposition to that part of Senate Bill No. 1143 proposing adoption of the Uniform Premarital Agreement Act’s provision allowing premarital waivers of spousal support: “The bill would change existing California law, which does not enforce premarital waivers of spousal support, to allow such waivers under certain conditions. Current California law allows spouses to waive spousal support only at the time of separation, when they are much more aware of what they have contributed to and sacrificed for the marriage as well as their prospects for self-support following the separation. California law regards the duty to support one’s spouse as an essential incident of marriage and refuses to confer the benefits of marriage on those who would avoid this obligation. Although numerous states have adopted the Uniform Premarital Agreement Act, California’s position represents sounder public policy and should not be sacrificed to achieve uniformity.”
In a letter to the Legislature on August 14, 1985, the Family Law Section of the State Bar of California echoed that concern. In opposing the proposed provision allowing premarital waivers of spousal support, the Family Law Section warned that such an enactment “would be a major change in California law” and “a great step backward in terms of assuring that the financial consequences of a dissolution of marriage are borne by both spouses in an equitable manner.”
In sharp contrast to the thoughtful action by the Legislature, which after the letters quoted above deleted the proposed provision allowing premarital waivers of spousal support, the majority ignores the significant public policy considerations that prompted the Legislature to retain our existing law prohibiting such waivers.
III
After repudiating the existing law of this state prohibiting all premarital waivers of spousal support, the majority abdicates its responsibility to articulate guidelines for the bench and bar explaining when, if ever, such waivers are enforceable. The majority declares that it will not decide “whether all such agreements [premarital agreements waiving spousal support] are enforceable regardless of the circumstances of the parties at the time enforcement is sought” (maj. opn., ante, at p. 41) and that it will not decide “whether circumstances existing at the time enforcement of a waiver of spousal support is sought might make enforcement unjust” (id. at p. 53, fn. omitted).
*60 Given the majority’s “holding” that such provisions may or may not be enforceable depending upon circumstances the majority refuses to discuss, what guidance is there for attorneys preparing a premarital agreement to decide whether to include a waiver of spousal support? And what guidance is there for trial courts in determining the enforceability of such agreements? If enforcement of a premarital waiver of spousal support results in a spouse’s becoming eligible for public assistance, should the trial court order spousal support limited to the amount necessary to avoid such eligibility, as provided for in the Uniform Premarital Agreement Act? (See ante, at p. 56, fn. 2.) Or should the trial court in that instance continue to apply the considerations the Legislature has specified in Family Code section 4320? (See ante, at p. 58, fn. 3.) The majority’s silence on these important questions does a disservice to the public, the bar, and the bench.
I would reverse the judgment of the Court of Appeal.
Respondent’s petition for a rehearing was denied November 1, 2000. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.

Section 3 of the Uniform Premarital Agreement Act provides: “(a) Parties to a premarital agreement may contract with respect to: (1) the rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located; [f] (2) the right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property; [IQ (3) the disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event; [10 (4) the *56 modification or elimination of spousal support; ft[] (5) the making of a will, trust, or other arrangement to carry out the provisions of the agreement; [H] (6) the ownership rights in and disposition of the death benefit from a life insurance policy; fl[] (7) the choice of law governing the construction of the agreement; and [1[] (8) any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty. [1[] (b) The right of a child to support may not be adversely affected by a premarital agreement.” (9B West’s U. Laws Ann., supra, at p. 373, italics added.)

Section 6, subdivision (b) of the Uniform Premarital Agreement Act states: “If a provision of a premarital agreement modifies or eliminates spousal support and that modification or elimination causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the agreement, may require the other party to provide support to the extent necessary to avoid that eligibility.” (9B West’s U. Laws Ann., supra, at p. 376.)

The issues I address here are not presented in In re Marriage of Bonds (2000) 24 Cal.4th 1 [99 Cal.Rptr.2d 252, 5 P.3d 815] (Bonds), a unanimous decision of this court filed *58 simultaneously with this decision, although both concern premarital agreements and both require interpretation of the Uniform Premarital Agreement Act. The main issue in Bonds is whether one spouse voluntarily entered into the premarital agreement, an issue not presented here. Also, the focus of the dispute in Bonds appears to be the premarital waiver of community property rights, not spousal support. This distinction is crucial because the Legislature, when it enacted the Uniform Premarital Agreement Act, deliberately omitted the provision authorizing spousal support waivers while approving and enacting the provision authorizing waivers of community property rights.
The Legislature’s decision to permit waiver of community property rights, but not spousal support, may be explained on policy grounds. A spouse who has waived community property rights, but not spousal support, retains effective protection against a sudden, drastic, and inequitable loss of income resulting from dissolution of marriage, and may have recourse either to former community property or to separate property to enforce a spousal support order (Fam. Code, § 4338). By contrast, a spouse who has lost the right to spousal support may well have no recourse except public assistance. Thus, the inequities that may result from premarital spousal support waivers are much graver than those that may result from a premarital waiver of community property rights.

Family Code section 4320 provides: “ffl In ordering spousal support under this part, the court shall consider all of the following circumstances: [511 (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [f] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [H] (2) The extent to which the supported party’s present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties. HQ (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party. ft[] (c) The ability to pay of the supporting party, taking into account the supporting party’s earning capacity, earned and unearned income, assets, and standard of living, [f] (d) The needs of each party based on the standard of living established during the marriage. [1¡] (e) The obligations and assets, including the separate property, of each party. [*]] (f) The duration of the marriage. [H] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party. [1[] (h) The age and health of the parties . . . . [H] (i) The immediate and specific tax consequences to each party. [1[] (j) The balance of the hardships to each party. fl[] (k) The goal that the supported party shall be self-supporting within a reasonable period of time. . . . [A] ‘reasonable period of time’ for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court’s discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section . . . and the circumstances of the parties. [1] (Z) Any other factors the court determines are just and equitable.”
Section 4320 applies to spousal support upon legal separation or dissolution of the marriage. (Fam. Code, § 4330, subd. (a).)