Filed 7/13/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| L.G., | B284742 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC658783) |
| v. | |
| M.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Delila Corral Lyons, Judge. Affirmed.

Buchalter, Harry W. R. Chamberlain II, Efrat M. Cogan and Robert M. Dato for Defendant and Appellant.

Mayer Brown, Donald M. Falk, Kim J. Zaneta; Erin Canfield Smith and Jennafer Dorfman Wagner for Family Violence Appellate Project as Amicus Curiae on behalf of Defendant and Appellant.

Caskey & Holzman, Marshall A. Caskey, Daniel M. Holzman and Neama Cory Barari for Plaintiff and Respondent.

_____

Defendant M.B. appeals from the trial court's denial of her motion to dismiss under the "anti-SLAPP" statute (Code Civ. Proc., § 425.16).[1]  Plaintiff and respondent L.G. is the former nanny for M.B. and M.B.'s ex-husband, S.B.[2]  Respondent filed this action against Appellant for defamation, invasion of privacy, and intentional infliction of emotional distress based upon statements that Appellant made about her in a declaration filed in support of Appellant's request for a domestic violence restraining order in her dissolution action.

Under Civil Code section 47, subdivision (b), statements made during judicial proceedings are generally privileged and nonactionable (except in a malicious prosecution claim).[3]  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211–212 (*Silberg*).)  However, section 47, subdivision (b)(1) creates an exception to this litigation privilege for an "allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action."  This marital dissolution exception (sometimes called the "divorce proviso"; see *Silberg*, at p. 216) applies unless the challenged statement is

---

[1] "SLAPP" is an acronym for "[s]trategic lawsuit against public participation."  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.)

[2] Because this case involves allegations of abuse and M.B. and S.B. have a minor child, we do not use names in this opinion. We refer to M.B. as "Appellant," S.B. as "Ex-Husband," and L.G. as "Respondent."

[3] Subsequent undesignated statutory references are to the Civil Code.

"sworn to," is material and relevant to the action, and the person making the statement does so without malice and with "reasonable and probable cause" to believe the statement is true. (§ 47, subd. (b)(1).)

The trial court found that the divorce proviso applied here because Appellant's statements were included in a pleading "filed in" her dissolution action, and Respondent neither asserted nor was the subject of any request for relief in that action. (§ 47, subd. (b)(1).) Appellant and amicus curiae Family Violence Appellate Project (Amicus) argue that the divorce proviso should be read narrowly to exclude statements made in applications for domestic violence restraining orders, presenting a number of policy justifications and legislative intent arguments in support of such a reading. While these arguments have logical force, we are not free to disregard the express terms of the statute. We agree with the trial court that the plain language of section 47, subdivision (b)(1) makes the divorce proviso applicable here. It is for the Legislature, not this court, to repeal or rewrite this subdivision if it wishes to accomplish the policy goals that Appellant and Amicus urge.

Although we differ on the reason, we also agree with the trial court's conclusion that Appellant's success in obtaining two temporary restraining orders—one against Ex-Husband in the dissolution action and one against Respondent in a separate civil harassment action—did not establish as a matter of law that there was "reasonable and probable cause" to believe that Appellant's challenged statements about Respondent were true. (§ 47, subd. (b)(1).) The record does not contain sufficient information concerning the reasons for the two temporary restraining orders to permit a conclusion that the judges who

granted those orders actually made any findings concerning the facts underlying the particular statements that Respondent challenges in this action.

Appellant's legal arguments concerning the litigation privilege and the effect of the prior rulings on the restraining orders are her only challenges on appeal to the trial court's finding that Respondent established a "probability that [she] will prevail" on her claims. (Code Civ. Proc., § 425.16, subd. (b)(1).) Because we reject those legal arguments, we affirm the trial court's denial of Appellant's anti-SLAPP motion.

## BACKGROUND

### 1.    *The Anti-SLAPP Procedure*

Code of Civil Procedure section 425.16 (the anti-SLAPP statute) provides for a "special motion to strike" when a plaintiff's claims arise from acts involving the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subds. (a), (b)(1).) Ruling on an anti-SLAPP motion involves a two-step procedure. First, the moving defendant must show that the challenged claims arise from activity that is protected under the anti-SLAPP statute. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) Second, if the defendant makes such a showing, the "burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral,* at p. 396.) In evaluating that showing, the trial court applies a standard similar to the review of a summary judgment motion. The court determines "whether the

4

plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Ibid.*)

## 2. *Appellant's Requests for Restraining Orders*
### a. *The dissolution action*

On April 3, 2017, Appellant filed an ex parte request for a restraining order against Ex-Husband in her pending dissolution action. In her declaration in support of the request, Appellant described abuse by Ex-Husband, including physical beatings (documented with photographs), verbal threats of violence, and personal insults. Appellant testified that Ex-Husband owned a firearm and had a previous conviction for domestic violence.

Appellant also claimed that Ex-Husband threatened to release embarrassing video recordings of sexual encounters that Ex-Husband forced her to have. She testified that Ex-Husband brought "random women" to hotel rooms and compelled Appellant to participate in sexual intercourse with him and these women, which he recorded against Appellant's wishes. Ex-Husband used threats to release these recordings as a means of control over Appellant.

Appellant's declaration also made various allegations about Respondent. Among other things, Appellant alleged that: (1) Ex-Husband began a sexual relationship with Respondent after he hired her as a nanny and set Respondent up as Appellant's "rival"; (2) Ex-Husband paid Respondent large amounts of Appellant's money for purported nanny services, including a large lump sum paid to an entity affiliated with Respondent after Appellant finally fired Respondent; (3) Respondent became pregnant with Ex-Husband's child, and Ex-Husband used Appellant's money to pay for an abortion; (4) at Ex-Husband's instruction, Respondent took Appellant's children

5

to Europe without Appellant's permission; (5) Respondent acted as an "agent" for Ex-Husband to "keep tabs" on Appellant for Ex-Husband; and (6) acting under Ex-Husband's protection, Respondent became "manipulative and demanding" and acted as if she were Ex-Husband's wife.

The court granted Appellant's request for a restraining order and issued a temporary order on a standard Judicial Council form. The order was to stay in effect until a hearing that was scheduled for April 24, 2017. At Ex-Husband's request, the hearing was continued until October 2017. The record does not reflect any further hearing on Appellant's request.[4]

### b. *The civil harassment action*

On April 10, 2017, Appellant filed an ex parte petition for a restraining order against Respondent in a civil harassment proceeding separate from the dissolution action. The petition sought various stay-away and personal conduct orders as well as orders permitting Appellant to have access to a storage facility and prohibiting Respondent from removing items from that facility.

In a declaration filed in support of her request, Appellant repeated many of the allegations against Respondent that she had included in her restraining order request in the dissolution action, including allegations that Respondent verbally abused her. Appellant also made additional allegations concerning her personal property. Appellant alleged that Respondent had said she was in possession of videos that Ex-Husband was using to

---

[4] The dissolution action apparently was settled in November 2017.

6

extort Appellant and that Respondent said she will "give them to [Ex-Husband] if he needs them." Appellant also claimed that some of her personal items, including valuable memorabilia from her entertainment career, had been moved to a storage locker that was rented using Respondent's e-mail address and telephone number and that was under the control of Ex-Husband and Respondent.

The court issued a temporary order granting Appellant's stay-away and personal conduct requests. The order also granted Appellant immediate access to the identified storage facility and permission to retrieve her personal belongings from the facility, and prohibited Respondent from removing any property from the storage facility "until further order of the court." The court set a hearing for May 3, 2017.

There was no appearance for Respondent at the May 3rd hearing. The court initially granted a five-year restraining order at that hearing, but subsequently vacated that ruling following a motion by Respondent claiming that she had not been properly served prior to the hearing. The court instead continued the temporary order pending a further hearing. The action subsequently settled.

### 3. *Respondent's Complaint*

Respondent filed her complaint in this action on April 20, 2017. The complaint asserts claims for defamation, invasion of privacy, false light, and intentional infliction of emotional distress based entirely on Appellant's allegations against her in Appellant's declaration filed in the dissolution action.

The complaint alleges that Appellant's allegations were false. According to the complaint, Respondent was a naïve 18-year-old woman when she first met Appellant and Ex-Husband,

7

and Appellant seduced Respondent with "alcohol, fame, and casual sex." Appellant and Respondent allegedly had a consensual long-term sexual relationship. Respondent claims that she had sex with Ex-Husband only when Appellant invited him to join them and that Appellant would sometimes record the encounters. Respondent denied that she became pregnant with Ex-Husband's child and alleges that Appellant herself helped Respondent to get an abortion when Respondent became pregnant from another man. She claims that she received money only as salary for her services as a nanny and denies that she ever used any of Appellant's money without Appellant's consent. She denies that she took the children against Appellant's wishes and claims instead that she took care of the children on a planned trip while receiving conflicting instructions from Appellant and Ex-Husband after the couple had been fighting. Respondent claims that she initially resigned from her nanny position because of the couple's escalating arguments, was rehired, and then was abruptly terminated from her employment after being "caught in the middle of those arguments." The complaint characterizes Appellant's allegations in her declaration as falsely depicting Respondent as a "homewrecker" and "extortionist" rather than a conscientious nanny and friend.

### 4. *Appellant's Anti-SLAPP Motion*

Appellant filed an anti-SLAPP motion seeking dismissal of each of Respondent's claims. The motion argued that Respondent could not show a probability that her claims will succeed on the merits, as Appellant's declaration was absolutely privileged under section 47. She also argued that, even if the exception to the privilege under section 47, subdivision (b)(1) was applicable, the statements in her declaration were nevertheless privileged

8

because the decisions granting the restraining orders against Ex-Husband and Respondent showed that there was probable cause for Appellant's allegations against Respondent.

Respondent's opposition did not dispute that, because her claims against Appellant are based on statements made during litigation, they "arise from" protected activity under the first prong of the anti-SLAPP procedure.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  However, Respondent argued that, under prong 2, the evidence was sufficient to show that she would prevail on her claims.  Respondent argued that only a qualified litigation privilege applied because her complaint challenges allegations that Appellant made about a nonparty in her declaration "filed in" her dissolution action, and the evidence was sufficient to show that Appellant made those statements with malice and without probable cause to believe their truth.

The trial court denied Appellant's anti-SLAPP motion.  The court concluded that the express language of section 47, subdivision (b)(1) covers Appellant's statements made in her declaration in the dissolution action.  The court also found that, based on the evidence Respondent provided, she had made a "prima facie showing of facts, which if credited by the trier of fact, would be sufficient to sustain a favorable judgment."  The trial court rejected Appellant's argument that the rulings granting the restraining orders established probable cause for Appellant's allegations.  The court concluded that those rulings were temporary and preliminary, and therefore were not decisions "on the merits" that could establish probable cause as a matter of law.

9

**DISCUSSION**

As in the trial court, Appellant's arguments on appeal are limited to the second prong of the anti-SLAPP procedure. Appellant argues that Respondent failed to show a probability that she would prevail on her claims because the statements that Respondent challenges in her lawsuit were made in a court filing and therefore were absolutely privileged under section 47. Alternatively, she argues that, even if only a qualified litigation privilege applied to those statements under section 47, subdivision (b)(1), the statements were privileged as a matter of law because the trial courts' prior decisions issuing the restraining orders against Ex-Husband and Respondent showed that Appellant had probable cause to believe the truth of the challenged statements. We apply a de novo standard of review to these issues. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

1.    ***The Divorce Proviso Exception to the Litigation Privilege Applies to Appellant's Challenged Statements Filed in Her Marital Dissolution Action***

The litigation privilege established by section 47, subdivision (b) applies to any communication (1) made in judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. (*Silberg, supra,* 50 Cal.3d at p. 212.) Our Supreme Court has described the privilege as "absolute in nature." (*Id.* at p. 215.) It applies to all

10

torts except malicious prosecution.  (*Id.* at pp. 215–216; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194.)[5]

Thus, the litigation privilege is broad.  Nevertheless, the privilege is subject to specific statutory exceptions.  As mentioned, section 47, subdivision (b)(1) creates one such exception for statements in pleadings or affidavits filed in dissolution actions.  Subdivision (b)(1) states in full:  "An allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action shall not be a privileged publication or broadcast as to the person making the allegation or averment within the meaning of this section unless the pleading is verified or affidavit sworn to, and is made without malice, by one having reasonable and probable cause for believing the truth of the allegation or averment and unless the allegation or averment is material and relevant to the issues in the action."  Whether

---

[5] Moreover, a number of courts have held that, because of the difficult and often bitter disputes in family law cases and the sanctions that are available in those proceedings for meritless filings, no malicious prosecution claim may arise from family law motions.  (See *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 32–37.)  Courts have applied that rationale to bar malicious prosecution claims based upon applications for domestic violence and civil harassment restraining orders, even when not filed in a dissolution proceeding.  (See *S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 35–36; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1572–1573.)  We discuss these cases further below in connection with Appellant's public policy arguments.

Appellant's challenged statements were absolutely privileged under section 47 depends upon the scope of this exception.

### a. *Prior precedent*

Appellant argues that we are not painting on an empty canvas in interpreting the divorce proviso because our Supreme Court already defined its scope in *Silberg*. Appellant argues that the divorce proviso should be interpreted narrowly, citing the court's observation in *Silberg* that the divorce proviso "may well be an unnecessary anachronism." (*Silberg, supra,* 50 Cal.3d at p. 216.) Amicus goes even further in arguing that in *Silberg* the court "authoritatively construed the proviso's language in a way that excludes third-party abusers from its reach." If that were correct and our Supreme Court had already interpreted the proviso in a manner that excluded the statements at issue in this case, of course our task would be done. But the court's decision in *Silberg* did not include such a holding.

In *Silberg,* the court disapproved an "interest of justice" exception to the litigation privilege that several Courts of Appeal had adopted. (*Silberg, supra,* 50 Cal.3d at pp. 212–213.) That exception excluded communications from the litigation privilege if the communications were "not made for the purpose of promoting the 'interest of justice.'" (*Id.* at p. 212.)

In rejecting this exception, the court relied in part on the language of the divorce proviso. The court noted that the divorce proviso was added to section 47 in 1927 to provide that "an allegation involving corespondents in pleadings and affidavits filed in divorce actions is not privileged unless stated under oath, without malice, and on reasonable grounds." (*Silberg, supra,* 50 Cal.3d at p. 216.) The court reasoned that, by "negative implication . . . statements published in proceedings *other* than

divorce actions may be malicious and still fall within the mantle of protection provided by the privilege." (*Ibid.*)  Otherwise, the "without malice" language would be "mere surplusage," which the Legislature presumably did not intend.  (*Ibid.*)  Thus, the court concluded that the " 'without malice' requirement applies only to those allegations against corespondents published in the pleadings and affidavits filed in dissolution proceedings."  (*Ibid.*) While discussing section 47, subdivision (b)(1), the court observed in a footnote that, "[u]nder our modern dissolution of marriage laws, where fault is no longer a relevant issue, 'the divorce proviso' may well be an unnecessary anachronism."  (*Id.* at p. 216, fn. 5.)

The court in *Silberg* did not define the term "corespondent." (*Silberg, supra,* 50 Cal.3d at p. 216.)  However, the court's observation that the divorce proviso may be an anachronism suggests that the court intended to refer to the historical meaning of the term.  "Corespondent" was used historically in divorce actions before the days of no-fault marital dissolution to refer to a person who was accused of committing adultery with a party as a ground for divorce.  (See, e.g., *Van Camp v. Van Camp* (1921) 53 Cal.App. 17, 19 ["the plaintiff first charged . . . that the husband had committed adultery with a person who was named as corespondent"].)  Amicus argues that the court's use of the term means that the court intended to limit the scope of the divorce proviso to persons falling within the historical definition

of that term.  Amicus asserts that this scope is "largely obsolete" and would not include Respondent.[6]

We do not agree with this interpretation.  First, the court in *Silberg* did not purport to make any holding on the scope of the divorce proviso.  It did not need to do so.  The divorce proviso was relevant in the court's discussion only to show that, in actions outside the scope of that proviso, there is no malice requirement. The precise scope of the proviso was not important; its only significance was to show that the malice requirement is limited to the dissolution actions in which it applies.  Thus, the court's description of the divorce proviso and its observation that the proviso may be an anachronism were not part of its holding. "[A]n opinion is only authority for those issues that it actually considered or decided." (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1076.)

Second, and consistent with the issue that it was considering, the court in *Silberg* did not engage in any textual analysis of section 47, subdivision (b)(1) or consider the implications of its description of that provision.  In particular, the

_____

[6] It is not clear why Amicus suggests that this scope, if applicable, would be only "largely" obsolete.  Under California's no-fault marital dissolution regime, the only two grounds for dissolving a marriage are "[i]rreconcilable differences" or "[p]ermanent legal incapacity to make decisions." (Fam. Code, § 2310.)  The grounds for dissolution must be "pleaded generally." (*Ibid.*)  Thus, there is no longer any reason to identify a corespondent to establish adultery as a ground for divorce. (See *Diosdado v. Diosdado* (2002) 97 Cal.App.4th 470, 474 ["Fault is simply not a relevant consideration in the legal process by which a marriage is dissolved"].)

14

court did not explain whether it intended its use of the historical term "corespondent" to have any effect on the current scope of the exception. (*Silberg, supra,* 50 Cal.3d at p. 216.) The lack of explanation is particularly notable, as the statute at the time (as now) did not use the term "corespondent," but provided more broadly that the exception applied to "a person by or against whom no affirmative relief is prayed in the action." (See Stats. 1927, ch. 866, § 1.) We do not read into the court's mere use of a single word that does not appear in the statute an intent to announce a binding interpretation, without explanation, of that statute that would make the provision essentially irrelevant.

Third, to the extent that the court did understand the divorce proviso to be an anachronism that no longer applied to *any* pleading filed in a dissolution action, that view is no longer tenable in light of subsequent legislative action. The Legislature amended section 47, subdivision (b) effective September 1990, seven months *after* the court filed its opinion in *Silberg* identifying the divorce proviso as an "unnecessary anachronism." The 1990 amendment updated the language of section 47 by redesignating the subdivisions and by substituting the phrase "marital dissolution or legal separation" for "divorce or an action prosecuted under section 137 of this code." (See Stats. 1927, ch. 866, § 1; Stats. 1990, ch. 1491, § 1.) The Legislative Counsel's Summary Digest for the bill that included this amendment described its purpose by explaining that "[e]xisting law specifies that complaints and affidavits filed in actions formerly known as divorce and separate maintenance are privileged only under prescribed conditions. [¶] This bill would revise the above references to correspond to current terminology, thus making these provisions applicable to actions for marital dissolution and

15

legal separation." (Legis. Counsel's Dig., Assem. Bill No. 3765 (1989–1990 Reg. Sess.) Summary Dig., p. 601.)

Whatever the precise scope of the amended subdivision, we presume that the Legislature's decision to retain and apply the exception to dissolution actions in 1990 rather than repealing it means that it intended the provision to be something other than a dead letter. As the court observed in *Silberg*, "we presume that the Legislature does not engage in idle acts." (*Silberg, supra,* 50 Cal.3d at p. 216.)

The court in *Thornton v. Rhoden* (1966) 245 Cal.App.2d 80, which Amicus also cites, described the divorce proviso in passing by explaining that "certain allegations made in divorce and similar actions against corespondents are not privileged" unless the conditions of the proviso are met. (*Id.* at p. 89.) However, like our Supreme Court in *Silberg,* the court in *Thornton* did not decide the scope of the divorce proviso and cited that provision only as potentially relevant to interpreting the scope of the litigation privilege where the proviso does not apply. That decision is no more helpful than *Silberg* in interpreting the scope of the divorce proviso itself.

Thus, in the absence of relevant precedent, we must consider whether the scope of the divorce proviso includes Appellant's challenged statements that she filed in her dissolution action. We begin, as we must, with the language of the statute. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 (*Day*).)

### b. *Statutory language*

Appellant's challenged statements fall within the express scope of the divorce proviso. Respondent's claims are based on "allegation[s]" and "averment[s]" that Appellant made concerning

16

her in a declaration that was "filed in" Appellant's dissolution action. Appellant's request for a restraining order against Ex-Husband was filed under the same case number as her dissolution action, and the restraining order was issued in that action. Respondent was a nonparty in that proceeding who neither sought nor was the subject of any "affirmative relief."[7]

Despite the plain language of section 47, subdivision (b)(1), Appellant argues that the divorce proviso does not apply here because Appellant was "not seeking 'marital dissolution or separation' " in requesting a domestic violence restraining order, and the Legislature did not intend to apply the divorce proviso to proceedings for such a restraining order. The dispositive response to this argument is that we are bound by the clear language of the statute. If a statute is unambiguous, "then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day,* 25 Cal.4th at p. 272.)

---

[7] Amicus suggests that Appellant indirectly sought relief against Respondent because Appellant requested an order precluding Ex-Husband from contacting Appellant "directly or indirectly," which would include contact by him through Respondent. The suggestion is creative but unpersuasive. The order that Appellant sought in the dissolution action, and the temporary restraining order that the court issued, did not direct *Respondent* to do or not do anything. It was an order only against Ex-Husband. Appellant independently sought a civil harassment restraining order in a separate action against Respondent, which is not at issue here. Thus, Respondent was not a "person . . . against whom . . . affirmative relief [was] prayed" in the dissolution action. (§ 47, subd. (b)(1).)

Civil Code section 47, subdivision (b)(1) is not ambiguous about the judicial filings to which it applies. It applies to "any pleading or affidavit *filed in* an action for marital dissolution or legal separation." (Civ. Code, § 47, subd. (b)(1), italics added.)[8] It does not say that it applies only when a particular type of relief is sought. Nor does it exclude any category of filings. Orders in marital dissolution actions typically provide many different types of relief in addition to an order changing the status of the parties, including orders concerning: (1) child custody; (2) child support; (3) spousal support; (4) settlement of property rights; and (5) attorney fees. (Fam. Code, § 2010.) In addition, during the dissolution proceeding, a court may issue temporary orders concerning custody and support, the restraint and disposition of property, and the protection of the parties. (See Fam. Code, §§ 754, 2045, 2047, 3022, 3060, 3600.) Thus, the category of pleadings *filed in* a dissolution action is much broader than the category of pleadings *filed for* a change in marital status. A statute specifying the former category cannot reasonably be read to include only the latter.

Because the language of the statute is clear, we need not resort to legislative history or policy considerations as a guide to interpret the statute. We nevertheless address Appellant's arguments on these topics to " 'test our construction against those extrinsic aids that bear on the enactors' intent.' " (*Day, supra,* 25 Cal.4th at p. 274, quoting *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 93.)

---

[8] A declaration is, of course, the functional equivalent of an affidavit. (Code Civ. Proc., § 2015.5.)

18

### c. *Legislative history*

Appellant argues that the Legislature did not intend the divorce proviso to apply to requests for domestic violence restraining orders because (1) the Family Code makes restraining orders available in circumstances beyond dissolution actions, and (2) the Legislature established the procedure for obtaining such orders well after the divorce proviso was enacted. Neither point is persuasive in light of the broad language of the proviso.

Just as dissolution actions typically include requests for many different types of relief, many of the types of relief that are available in dissolution actions are also available in other contexts. For example, child custody and child support awards may be sought in an action separate from a dissolution proceeding (Fam. Code, §§ 3120, 4000); parties in civil actions may obtain preliminary injunctions to avoid waste or irreparable injury (Code Civ. Proc., § 526, subd. (a)(2)); creditors may obtain orders against the disposition of assets (Civ. Code, § 3439.07, subd. (a)(3)(A)); and motions for attorney fees are available in a variety of proceedings, including anti-SLAPP motions (Code Civ. Proc., § 425.16, subd. (c)). Thus, the fact that domestic violence restraining orders are available both in dissolution actions and in a separate action is not unique.[9] Reading Civil Code section 47, subdivision (b)(1) to apply only to relief that is solely available in

---

[9] Nor does the fact that a request for a restraining order *can* be filed in a separate action mean that such a request that *is* filed in a dissolution action should be considered somehow separate from that action. As the trial court observed, if that were the case, motions or requests for injunctions filed in civil cases would all be considered separate actions.

19

a dissolution action would exclude many, if not most, of the pleadings that are "filed in" such an action. There is no reason to believe that the Legislature intended such a narrow reading of the broad language it adopted in the statute.

Appellant's arguments concerning the original purpose for the divorce proviso do not change this conclusion. Appellant cites scholarly commentary suggesting that the proviso was adopted to avoid " 'legal blackmail' " through unfounded allegations of adultery against third parties in divorce proceedings. (See Friedman, Guarding Life's Dark Secrets: Legal and Social Controls Over Reputation, Propriety, and Privacy (Stanford U. Press 2007) p. 290, n. 48.) Presumably the defamatory effects of such unfounded allegations would be just as severe whether they appeared in the original complaint seeking a divorce based upon the fault of a spouse or in some other pleading filed during the proceeding, such as a motion for child custody or a restraining order.

Appellant's argument that the procedure for obtaining domestic violence protective orders did not exist in 1927 when the divorce proviso was originally enacted does not take account of the Legislature's 1990 amendment. A procedure for obtaining domestic violence restraining orders *did* exist when the Legislature amended the divorce proviso in 1990. Indeed, in September 1990, the same month that the Legislature amended the divorce proviso, it also enacted substantive changes to the procedures for obtaining a domestic violence restraining order. (See Stats. 1990, ch. 752.) If the Legislature wished to exclude applications for a domestic violence restraining order from the scope of section 47, subdivision (b)(1), it could have done so expressly by amendment.

As discussed above, the Legislature's 1990 amendment to the divorce proviso also precludes any argument that the proviso no longer applies because its original purpose has become irrelevant. The Legislature's decision to retain and amend the provision in 1990 requires us to presume that it has some current application, particularly as the amendment occurred after the court observed in *Silberg* that the marriage proviso "may well be an unnecessary anachronism."[10] (*Silberg, supra,* 50 Cal.3d at p. 216, fn. 5.) As our Supreme Court has explained: "Statutes are to be interpreted by assuming that the Legislature was aware of the existing judicial decisions. [Citation.] Moreover, failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (*Kusior v. Silver* (1960) 54 Cal.2d 603, 618.)

Thus, the legislative history of the divorce proviso does not support a reading that would exclude Respondent from its scope.

---

[10] Even if we were to read the proviso as limited to allegations against the modern version of a corespondent, that limitation would not help Appellant. As this case illustrates, even under a no-fault marital dissolution regime a party seeking dissolution can still accuse his or her spouse of adultery. A third party who is accused of participating in such adultery is the closest contemporary analog to a corespondent. Respondent fits that definition. Appellant's allegations in the dissolution action that Respondent engaged in an extramarital sexual relationship with Ex-Husband are among the statements that Respondent claims were defamatory.

21

### d. *Policies underlying domestic violence restraining orders*

Appellant and Amicus present various reasons why reading the divorce proviso narrowly to exclude declarations in support of restraining orders would be consistent with the policies and goals of the statutory scheme governing domestic violence restraining orders.  For example, they argue that applying the divorce proviso to pleadings seeking domestic violence restraining orders in dissolution actions would:  (1) create inconsistency with cases holding that family law motions, including motions for restraining orders, are immune even from malicious prosecution actions;[11] (2) discourage restraining order applications by victims

---

[11] Appellant goes even further in suggesting that such cases are controlling here.  They are not.  The cases that Appellant cites considered whether an action for malicious prosecution may be based upon family law motions.  They did not concern the exception to the litigation privilege in section 47, subdivision (b)(1).  (See *Bidna v. Rosen, supra,* 19 Cal.App.4th at p. 37; *S.A. v. Maiden, supra,* 229 Cal.App.4th at pp. 42–43; *Siam v. Kizilbash, supra,* 130 Cal.App.4th at p. 1572.)  Cases that Appellant cites concerning application of the "absolute" litigation privilege to family law cases are similarly irrelevant, as none of those cases involved a person "by or against whom no affirmative relief is prayed in the action."  (§ 47, subd. (b)(1); *Gootee v. Lightner* (1990) 224 Cal.App.3d 587, 589 [litigation privilege applied to testimony and related preparatory activities by psychologist on a child custody issue]; *Green v. Uccelli*  (1989) 207 Cal.App.3d 1112, 1124 [claims against attorney in a dissolution action concerning litigation conduct]; *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956 [litigation privilege applied to letter concerning past alleged abuse affecting visitation rights; no

of third parties, whom abusers commonly use to further their control over their victims; (3) provide a perverse encouragement for abusers to use third parties in their abusive schemes; (4) increase the use of defamation claims as a tactic of abuse; (5) unfairly distinguish between unmarried and married victims of domestic abuse when they seek a restraining order; and (6) create arbitrary differences between counties that require requests for restraining orders to be filed in pending dissolution actions and those that permit such requests to be filed in separate proceedings even if a dissolution action is pending.

While many of these arguments articulate persuasive policy goals, whether this court believes that those goals are important is not the issue. Appellant has not raised any equal protection or other constitutional challenge to the application of the divorce proviso to her challenged statements. Our review is therefore limited to interpreting the statute.

In doing so, this court " 'has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 75, quoting *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632–633.) Where the statutory language is clear, we may not use our own policy judgments to justify a contrary interpretation. " 'The plain

---

discussion of divorce proviso]; *Rader v. Thrasher* (1972) 22 Cal.App.3d 883, 888–889 [divorce proviso did not apply to alleged defamatory statements about a lawyer in dissolution action, as the lawyer "was not only seeking affirmative relief for his client in the various actions involved, but indirectly for himself as well in the form of attorney's fees"].)

language of the statute establishes what was intended by the Legislature.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [plain language of the anti-SLAPP statute included malicious prosecution actions within its scope], quoting *People v. Statum* (2002) 28 Cal.4th 682, 690.) The plain language of section 47, subdivision (b)(1) establishes that only a qualified privilege applies to statements in the declaration that Appellant filed in her dissolution action, regardless of the policy concerns that she and Amicus raise.

Citing *Cassell v. Superior Court* (2011) 51 Cal.4th 113, Appellant asserts that, despite the general principle that the plain language of a statute is controlling, we must avoid a "literal construction [that] would produce absurd results." (*Id.* at p. 124.) But this is not one of the rare cases in which applying the literal terms of a statute would subvert clear legislative intent. "To justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them." (*In re D.B.* (2014) 58 Cal.4th 941, 948, citing *Cassell*, at p. 136.) A court may not disregard the plain language of a statute just because the consequences of a literal interpretation are "troubling" or because the court believes that a different approach would be better. (*D.B.*, at p. 948.)

The Legislature could have made rational distinctions concerning the scope of the litigation privilege between pleadings filed in dissolution actions and in separate proceedings for domestic violence restraining orders. The Legislature might have concluded that dissolution proceedings are more likely to involve allegations of adultery or other potentially defamatory assertions about third parties who have allegedly interfered with the

24

marital relationship.  Dissolution proceedings also may be more likely to involve disputes over custody, support, and property in which third parties could be involved.  Pleadings in support of restraining orders in dissolution actions therefore might be more likely to contain tangential or gratuitous allegations against third parties as part of the strategy of litigating the issues surrounding the marital dissolution.[12]

We do not suggest that the Legislature actually had this rationale in mind in declining to amend or repeal the divorce proviso.  But the decision to give effect to the plain language of section 47, subdivision (b)(1) does not lead to absurd results.  If the Legislature believes that the divorce proviso is no longer necessary, or that it improperly interferes with policies underlying proceedings for restraining orders, it is free to change the language of the provision or repeal it entirely.

---

[12] Indeed, Respondent alleges such a strategic purpose in this case.  Respondent claims that Appellant "needlessly and gratuitously" made the allegedly defamatory accusations against her in the dissolution action "as a preemptive strike to discredit any potential testimony from [Respondent] during the divorce and child custody proceedings."  In ruling that Respondent had sufficiently shown a probability of success on her claims, the trial court found that a reasonable jury could conclude that Appellant made the allegedly false accusations against Respondent out of such a motive.

**2.**     ***The Prior Rulings Granting the Temporary***
           ***Restraining Orders do not Establish Probable***
           ***Cause for Appellant's Challenged Statements as***
           ***a Matter of Law***

Appellant argues that the two judges' decisions granting her requests for temporary restraining orders in the dissolution action and in her separate civil harassment action against Respondent established as a matter of law that she had "reasonable and probable cause for believing the truth of" the allegations she made about Respondent.  Appellant analogizes to the doctrine applied in malicious prosecution actions commonly called the " 'interim adverse judgment rule.' "  (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 771 (*Parrish*).

The interim adverse judgment rule operates to preclude a malicious prosecution claim when a ruling in the prior action on which the claim is based shows that the defendant (i.e., the former plaintiff) had probable cause to bring that action.  The elements of a malicious prosecution claim include proof that the defendant "initiated or maintained" a previous action "without probable cause."  (*Parrish, supra,* 3 Cal.5th at p. 775.)  Under the interim adverse judgment rule, "if an action succeeds after a hearing on the merits, that success ordinarily establishes the existence of probable cause . . . even if the result is overturned on appeal or by later ruling of the trial court."  (*Id.* at p. 771.)  The rule applies to the successful defense of a summary judgment motion by the former plaintiff (and current defendant) in the prior action (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 823–824 (*Wilson*); a ruling denying a motion for nonsuit, if based on an evaluation of the evidence (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150,

26

183–184); and victory after trial, even if later overturned on appeal (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 21).

We agree with Appellant that the rationale underlying the interim adverse judgment rule is potentially relevant to determining whether a ruling in a prior case established the probable cause required under section 47, subdivision (b)(1). The interim adverse judgment rule is based on the principle that "[c]laims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness." (*Wilson, supra,* 28 Cal.4th at p. 818.) Similarly, if a defendant obtained relief or otherwise prevailed at a hearing on the merits in prior litigation based upon statements that are challenged as defamatory, the prior ruling might show that the defendant at least had probable cause to make the statements.[13]

However, the analogy is not perfect. A malicious prosecution action will fail if the defendant had probable cause to bring a *claim* in the prior action. In contrast, the litigation privilege applies under section 47, section (b)(1) only if a defendant had probable cause for "believing the truth of" the

_____

[13] This assumes that the existence of probable cause under section 47, subdivision (b)(1) is an objective question rather than subjective, and, like the probable cause at issue in a malicious prosecution claim, may be determined as a matter of law based on " 'the facts known to the defendant.' " (*Parrish, supra,* 3 Cal.5th at p. 776, quoting *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) For the reasons discussed below, we need not decide that issue.

allegations or averments at issue. Thus, while prior success in prosecuting a particular claim may establish probable cause for such a claim as a matter of law, it does not necessarily establish probable cause to believe the truth of every allegation supporting the claim.

We need not decide whether, and how, the interim adverse judgment rule applies to proof of probable cause as a matter of law under section 47, subdivision (b)(1). Even assuming that, in some circumstances, a prior ruling on the merits can establish probable cause for the truth of particular allegations, the prior rulings granting the temporary restraining orders at issue here were too opaque to fill that role.

 In the malicious prosecution context, our Supreme Court has observed that a prior ruling cannot establish probable cause if the reasons for the ruling are uncertain. In *Wilson,* the court held that a prior ruling denying an anti-SLAPP motion may establish probable cause for the plaintiff's action under the interim adverse judgment rule.[14] However, the court explained that a ruling on an anti-SLAPP motion that was based on procedural or technical grounds, or on the ground that the action did not arise from a protected activity under the first prong of the

---

[14] A subsequent amendment to the anti-SLAPP statute abrogated this holding by providing that a court's ruling on an anti-SLAPP motion finding a probability that the plaintiff will prevail on its claims is not admissible, and that "no burden of proof or degree of proof otherwise applicable shall be affected by that determination . . . in any subsequent proceeding." (Code Civ. Proc., § 425.16, subd. (b)(3); *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547–548.)

28

anti-SLAPP procedure, or "for reasons that cannot be determined" would say nothing about the action's potential merit and would not establish probable cause. (*Wilson, supra,* 28 Cal.4th at p. 823; cf. *Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350, 358–359 [the interim adverse judgment rule would not bar a malicious prosecution claim against a former plaintiff if a prior ruling established only "probable cause for some but not all" of the former plaintiff's causes of action].)

For the reason discussed above, the potential for uncertainty about the scope of a prior ruling is even greater in a case such as this, which involves challenges to particular statements, than in a malicious prosecution case, which involves a broader challenge to a claim. In a defamation case or similar action challenging particular allegations, it is not enough to discern from a prior ruling whether the court found that a *claim* had sufficient merit to proceed. One must also determine whether the court made favorable findings about each challenged *allegation* underlying the claim.

The difficulty here is similar to the problem that can arise in determining whether to give collateral estoppel effect to a prior judicial decision.[15] Collateral estoppel applies only if an issue

---

[15] The requirements to establish collateral estoppel are relevant only by analogy. Our Supreme Court has explained that the interim adverse judgment rule is not part of the "doctrine of res judicata or any of its branches," but is derived from the definition of probable cause. (*Wilson, supra,* 28 Cal.4th at p. 825.) The interim adverse judgment rule does not operate to preclude relitigation of an issue of fact, but simply to determine whether a prior judicial ruling establishes probable cause as a

was "actually litigated and necessarily decided" in a prior case. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.) If the record does not permit a conclusion that an issue was necessarily decided, the prior decision cannot be given preclusive effect. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1197–1198 [record from a prior action that resulted in the dismissal of a quiet title claim against a party did not show that the party successfully established his own right to title].)

The record in this case does not contain sufficient information to discern which, if any, of Appellant's challenged allegations the court found had merit when the temporary restraining orders were issued. Appellant's statements in support of the restraining order in the dissolution action (which include all the statements directly at issue in this action) primarily concerned Ex-Husband, who was the person that Appellant sought to restrain. Those statements included direct allegations of abuse by Ex-Husband that could have been sufficient in themselves to support the judge's decision to issue a temporary restraining order against Ex-Husband without ever considering Appellant's allegations about Respondent.

Although Appellant sought a restraining order against Respondent in the civil harassment action, the judge's ruling in that action nevertheless does not reveal what findings, if any, the judge made about Appellant's particular allegations in support of

matter of law. (*Ibid.*) Nevertheless, the problem here—determining whether a ruling in a prior case decided a particular issue—is the same problem that can arise in collateral estoppel cases.

her application.  Along with standard personal conduct and stay-away orders, Appellant sought—and the court granted—an order giving Appellant access to a storage facility where she alleged her personal property was present and prohibiting Respondent from removing property from that storage facility.  Appellant supported her request with a number of detailed allegations, some of which were the same or similar to her allegations in the request filed in the dissolution action that are at issue in this case (e.g., allegations concerning Respondent's sexual relationship with Ex-Husband and Ex-Husband's alleged extravagant payments to Respondent).  However, the judge need not have relied on those allegations in deciding to grant the temporary restraining order.  The judge could have issued the order based simply on Appellant's allegations that Respondent had become verbally abusive and was in control of Appellant's personal property.[16]

---

[16] Because the parties' briefs did not directly address this issue, pursuant to Government Code section 68081, we invited the parties to submit supplemental letter briefs addressing whether the reasons for the trial court's prior decisions granting the restraining orders can "be determined with sufficient certainty to permit those rulings to establish the existence of probable cause as a matter of law for the statements by [Appellant] that are the subject of [Respondent's] lawsuit."  Along with her letter brief, Appellant filed a request for judicial notice of some additional documents from the trial court's file in the restraining order proceedings.  We grant the motion.  However, these additional documents do not provide any further information concerning the specific basis for the rulings.  The documents include court orders on procedural issues that

Thus, we conclude that the record does not support a finding that the judges in the dissolution action or the civil harassment action made any ruling that could establish probable cause for Appellant's challenged statements as a matter of law.

Other than legal arguments concerning the litigation privilege and the interim adverse judgment rule, Appellant does not raise any other challenge to the trial court's finding that Respondent supported her opposition to Appellant's anti-SLAPP motion with sufficient evidence showing a probability that she will prevail on her claims. (Code Civ. Proc., § 425.16, subd. (b)(1).) We therefore affirm the trial court's ruling denying Appellant's anti-SLAPP motion. In light of our disposition, we need not decide whether the trial court was correct in ruling that the prior decisions granting the restraining orders were not rulings "on the merits."[17]

---

continued the restraining orders in force pending further hearings. None of these procedural orders addressed the bases for the initial decisions to issue the restraining orders.

[17] The preliminary nature of the restraining orders would not necessarily preclude a finding that they established probable cause as a matter of law. In *Wilson,* our Supreme Court cited with approval *Butler v. Ratner* (1994) 619 N.Y.S.2d 871, which held that the issuance of a temporary restraining order "creates [a] presumption of probable cause" even though later vacated by an appellate court. (*Wilson, supra,* 28 Cal.4th at p. 822, fn. 7, citing *Butler* at pp. 873–874.) In *Fleishman v. Superior Court, supra,* 102 Cal.App.4th 350, Division Six of this district held that the interim adverse judgment rule could properly be applied based on a prior ruling granting a preliminary injunction, even if the party opposing the preliminary injunction motion had been

### 3.    *Respondent is not Entitled to Attorney Fees*

Respondent does not challenge the trial court's ruling denying her attorney fees for successfully opposing Appellant's anti-SLAPP motion below.  However, she argues that Appellant's appeal was frivolous and that Respondent is therefore entitled to her fees on appeal.

We conclude that Appellant's appeal was not frivolous or solely intended to cause unnecessary delay.  (Code Civ. Proc., § 425.16, subd. (c)(1).)  Her appeal raises colorable issues.  We therefore deny Respondent's request for attorney fees on appeal.

---

"erroneously precluded from presenting evidence to the contrary." (*Id.* at p. 357.)  However, whether application of the interim adverse judgment rule would be proper where, as here, a prior preliminary ruling was issued on an *ex parte* basis without *any* opportunity to oppose the motion is another question, which we need not now decide.

## DISPOSITION

The trial court's order denying Appellant's anti-SLAPP motion is affirmed.  Respondent is entitled to her costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.